O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATALINA RICALDAI, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>US INVESTIGATIONS SERVICES, LLC, a Delaware limited liability company,<br><br>　　　　　　Defendant. | Case No. CV 10-07388 DDP (PLAx)<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket No. 48] |

Presently before the court is Defendant's Motion for Partial Summary Judgment ("Motion"). Having reviewed the parties' moving papers and heard oral argument, the court denies the Motion in part, grants the Motion in part, and adopts the following Order.

**I.　BACKGROUND**

From July 2003 to November 2008, Plaintiff Catalina Ricaldai ("Ricaldai") worked as a field investigator for Defendant US Investigations Services, LLC ("USIS"). USIS field investigators conduct background investigations of individuals seeking employment with or already employed by the federal government. During

Ricaldai's employment at USIS, field investigators typically worked remotely out of their homes and with a company car, gathering records, conducting interviews, and preparing written reports. (Pl.'s Statement of Genuine Issues in Opp'n to Mot. ("SS"), Nos. 1-2, 6-9.)  "USIS expected California-based investigators to work 40 hours each week and eight hours per day unless they had approved overtime."  USIS also "expected investigators to close their investigation within the time allotted to the file."  (Mot. at 5.) USIS therefore "trained investigators to build their own daily work schedule based on the work they had to complete for their investigations, not based on a particular schedule."  (SS No. 13.)

Under California state law, if an employee works five or more hours in a day, the employee has the right to a 30-minute meal period, free of any job duties and starting no later than the fifth hour of work.[1]  See Brinker Rest. Corp. v. Super. Ct., 139 Cal. Rptr. 3d 315, 343-44 (Cal. 2012) (discussing Labor Code section 512).  The meal break is not limited to the right to eat; rather, employees must be free to attend to _any_ personal business they may choose during the 30-minute period.  See id. at 340.

During Ricaldai's employment, the USIS employee handbook section on timekeeping included the statement: "Do not start work early, finish work late, work during a meal break or perform any other extra or overtime work unless you are authorized to do so." (Decl. of Lara K. Strauss in Supp. of Mot. ("Strauss Decl."), Ex. E at 41.)  USIS also posted in its district offices the required

---

[1] If an employee works no more than six hours in a day, the meal period may be waived by mutual consent of the employer and employee.  See Brinker, 139 Cal. Rptr. 3d at 344.

2

1  Industrial Welfare Commission ("IWC") wage order regarding meal
2  periods.  See 8 Cal. Code Regs. tit. 8, § 11040(22).  USIS did not,
3  however, otherwise train or advise employees as to their meal
4  period rights.  (SS at 45-53.)  To the contrary, Ricaldai argues
5  that her trainers and supervisors, along with particular company
6  policies, unlawfully pressured her to work during meal periods.
7  USIS also failed to record meal periods, in violation of the
8  applicable IWC wage order.  See id. § 11040(7)(A)(3).  Ricaldai
9  claims that she therefore never took the 30-minute, duty-free meal
10 period provided by California law.
11      Specifically, Ricaldai alleges that during a 2003 field
12 training for "update investigations," her trainer told her "to pack
13 her lunch because they would not have time to stop and eat lunch."
14 (SS Nos. 56-58; Decl. of Christine C. Choi in Supp. of Pl.'s Opp'n
15 to Mot. ("Choi Decl."), Ex. 1 at 66, 75, 79.)  Throughout the
16 training period, Ricaldai and her trainer did in fact "eat lunch
17 while they were looking at the paperwork and reviewing the
18 interviews they had done."  (SS No. 59.)  Further, while
19 instructing Ricaldai on how to fill out her time cards, the trainer
20 told her that: "it was not okay for [Ricaldai] to do something else
21 during the course of the day for personal reasons, such as go to a
22 doctor's appointment," and that Ricaldai "had to work eight hours a
23 day and request time off from the district manager if she needed to
24 incorporate any personal activities."  (SS Nos. 60-61.)  During
25 this field training and a one-week training in Pennsylvania,
26 Ricaldai was also "told that she had to 'zone' her work," meaning
27 that "if she was in a particular geographic area, she had to make
28 sure to fill her day in the zone with scheduled interviews, visits

3

to the court, or walks around the neighborhood to try and get more interviews." (SS Nos. 62, 65-66.)

Likewise, at a 2004 training and during quarterly "'check rides' with the district manager or team lead" throughout her employment, Ricaldai and the trainer or supervisor again had "working lunch[es]." (SS Nos. 68-72; Choi Decl., Ex. 1 at 80.) On days that Ricaldai had a check ride, she and her supervisor "would sit down, grab a sandwich, go through a checklist, and talk about different things that they liked or did not like during the interviews that [Ricaldai] had conducted." (SS No. 72.)

More broadly, Ricaldai asserts that "it was not possible for [her] to take 30 minutes of off-duty time during the day because it was the culture of the job to get as much testimony as possible." (SS No. 73.) According to Ricaldai, "[a]ny time off was considered a waste and a failure to correctly zone the geographic area." Ricaldai also "had to accommodate the schedules and availability of witnesses." (SS Nos. 74-75.) Ricaldai therefore allegedly "[a]lways took a working lunch wherein she would review paperwork and type reports on her laptop," and "[n]ever did any type of personal activity during the course of her day without previously requesting time off." (SS Nos. 76-78.)

Based on these alleged meal period violations - and overtime issues not relevant to this Motion - Ricaldai filed a putative class action suit against USIS in California state court, on August 26, 2010. USIS removed the action to this court on October 4, 2010, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Ricaldai filed a Second Amended Class Action Complaint ("Complaint") on June 9, 2011. In her Complaint, Ricaldai alleges

4

six causes of action: 1) failure to provide meal periods, in violation of California Labor Code ("Labor Code") sections 226.7 and 512; 2) failure to properly calculate and pay overtime, in violation of Labor Code section 1194(a); 3) failure to timely pay wages, in violation of Labor Code section 203; 4) failure to maintain and provide accurate itemized statements, in violation of Labor Code section 226; 5) enforcement of the Private Attorneys General Act ("PAGA"), Labor Code § 2698; and 6) unlawful business practices, in violation of California Business and Professions Code section 17200. Ricaldai's third through sixth causes of action are predicated on her meal period and overtime claims.

USIS filed this Motion for Partial Summary Judgment on September 9, 2011. USIS argues that it is entitled to judgment as a matter of law on Ricaldai's meal period claim, because Ricaldai indisputably had the independence and flexibility to set her own schedule and take the required breaks. USIS therefore also argues that it is entitled to summary judgment on claims three through six, to the extent they are based on Ricaldai's meal period claim. Last, USIS contends that Ricaldai's PAGA and Labor Code section 226 claims are time-barred, and that the section 226 claim also fails because Ricaldai does not allege certain required elements.

**II.  LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all

justifiable inferences are drawn in its favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 259. Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252. But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when he or she is ruling on a motion for summary judgment. <u>Id.</u> at 255.

**III. DISCUSSION**

    **A.   Meal Period Claim**

        **1.   California Meal Period Law after <u>Brinker</u>**

The California Supreme Court recently clarified the law regarding meal periods, in <u>Brinker Restaurant Corp. v. Superior Court</u>, 139 Cal. Rptr. 3d 315 (Cal. 2012). Relevant here, the court concluded that "an employer must relieve the employee of all duty

6

for the designated period, but need not ensure that the employee does no work." Id. at 338.  The court further explained that a "worker must be free to attend to any personal business he or she may choose during the unpaid meal period." Id. at 340 (quoting Cal. Dep't of Indus. Relations, Div. of Labor Standards Enforcement, Opinion Letter No. 1991.06.03, at 1).  Accordingly, the meal period requirement is only "satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) is free to leave the premises, and (3) is relieved of all duty for the entire period." Id.

The court also emphasized that, although employers are not required to ensure that employees do not voluntarily choose to work during a meal period, "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." Id. at 343 (citing Cicairos v. Summit Logistics, Inc., 133 Cal. App. 4th 949, 962–63 (2005) (finding potential meal period violations where "defendant's management pressured drivers to make more than one daily trip, making drivers feel that they should not stop for lunch"); Jaimez v. DAIOHS USA, Inc., 181 Cal. App. 4th 1286, 1304–05 (2010) (finding potential violations based on evidence that scheduling policy "made it extremely difficult" for employees to both timely complete deliveries and take all required breaks); Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 638 (S.D. Cal. 2010) (finding potential violations given evidence of informal anti-meal-period policies "enforced through 'ridicule' or 'reprimand'")).

In other words, the "wage orders and governing statute do not countenance an employer's exerting coercion against the taking of,

7

creating incentives to forego, or otherwise encouraging the skipping of legally protected breaks." Brinker, 133 Cal. App. 4th at 343. Thus, as the court summarized: "The employer satisfies [its meal period] obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id.[2]

Finally, in a concurring opinion joined by Justice Liu, Justice Werdegar emphasized that relevant IWC wage orders also require employers to record meal periods. Id. at 353 (Werdegar, J., concurring) (citing Cal. Code Regs. tit. 8, § 11050); see also Cal. Code Regs. tit. 8, § 11040(7)(A)(3) (same). The Justices therefore concluded that the burden is on the employer to show that it relieved an employee of all duty for a meal period, if the employer fails to record the meal period as required. As the Justices explained in detail:

> If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided. An employer's assertion that it did relieve the employee of duty, but the employee waived the opportunity to have a work-free break, is not an element that a plaintiff must disprove as part of the plaintiff's case-in-chief. Rather, as the Court of Appeal properly recognized, the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it.

---

[2] The court also held that if an employee does in fact voluntarily decide to work during a meal period - free of employer pressure or coercion - the employer may still have to pay for that time worked. See id. at 342 n.19. Specifically, although the employer would not be liable for the "premium pay" penalty for a meal period violation, the employer would be liable for "regular compensation" for the time worked, if it "knew or reasonably should have known that the worker was working through the authorized meal period." Id. (internal quotation marks omitted).

8

> . . . .
>
> As the Division of Labor Standards Enforcement (DLSE) has explained, even under the less restrictive wage order applicable to agricultural employees, if "a meal period is not taken by the employee, the burden is on the employer to show that the agricultural employee had been advised of his or her legal right to take a meal period and has knowingly and voluntarily decided not to take the meal period. Again, we emphasize, the burden is on the employer." (Dept. Industrial Relations, DLSE Opinion Letter No. 2003.08.13 (Aug. 13, 2003) p. 2 [interpreting IWC wage order No. 14 (Cal. Code Regs., tit. 8, § 11140)].)  To place the burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods. Both the United States Supreme Court and the courts of this state have rejected such an approach.

Brinker, 133 Cal. App. 4th at 353 & n.1 (Werdegar, J., concurring) (citations omitted).

### 2. Application of Brinker

According to USIS, Ricaldai's meal period claim fails as a matter of law, because it is undisputed that: 1) Ricaldai had complete control over her schedule, given her remote work and the availability of overtime; and 2) USIS adequately informed Ricaldai of her meal period rights, by posting the relevant IWC wage order and including a statement prohibiting work during meal periods in its employee handbook.  USIS therefore contends that, even if Ricaldai never took the required meal breaks, this decision was entirely voluntary.  Ricaldai argues, to the contrary, that there is a genuine dispute as to this meal period issue, because USIS: 1) failed to record any meal periods, as required; 2) never informed employees of essential aspects of their meal period rights; and 3) instead, had affirmative policies and trainings that pressured Ricaldai not to take duty-free breaks.  Although the question is a close one, and USIS makes valid points that certainly could

convince a trier of fact that USIS complied with its meal period obligations, the court finds that Ricaldai has raised a genuine issue of material fact.  Specifically, a reasonable juror might find that USIS policies and practices unlawfully discouraged Ricaldai from taking the required <u>duty-free</u> meal periods.

As an initial matter, the court notes its agreement with Justices Werdegar and Liu that it is the employer's burden to rebut a presumption that meal periods were not adequately provided, where the employer fails to record any meal periods.  Otherwise, employers would have an incentive to ignore their recording duty, leaving employees the difficult task of proving that the employer either failed to advise them of their meal period rights, or unlawfully pressured them to waive those rights.  <u>See</u> <u>Brinker</u>, 133 Cal. App. 4th at 353 & n.1 (Werdegar, J., concurring) (citing <u>Cicairos</u>, 133 Cal. App. 4th at 961 ("[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." (internal quotation marks omitted))).  Here, as mentioned, there is no dispute that USIS failed to record any meal periods.

However, even if the burden of proof were on Ricaldai, the court would still find a genuine issue of material fact.  As discussed, Ricaldai has provided evidence that during initial all-day trainings, her trainer expressly informed her that there would not be time for meal breaks.  Ricaldai and her trainer therefore took working lunches, where Ricaldai was not relieved of all duties as required by California law.  As USIS notes, these apparent meal period violations fall outside the relevant statute of limitations.  They still support an inference, however, that USIS implicitly

10

trained Ricaldai to <u>not</u> take duty-free meal periods.  The same can be said for Ricaldai's claim that trainers and supervisors had her take working lunches during subsequent trainings and check rides. As USIS argues, it is unclear whether any of these later trainings or check rides lasted five hours or more; thus, the working lunches did not <u>necessarily</u> violate the meal period requirement.  But even if there was no direct violation on these occasions, USIS' ongoing practice of having Ricaldai take working lunches still supports an inference of employer pressure to work through meal periods.

This inference is further supported by evidence that USIS prohibited employees from taking any personal time during the workday, without employer permission.  As mentioned, Ricaldai's initial trainer allegedly instructed her that "it was <u>not</u> okay . . . to do something else during the course of the day for personal reasons," and that she had to request time off "if she needed to incorporate any personal activities" in her eight-hour day. Although ambiguous, a reasonable factfinder might conclude that these instructions applied even to personal errands lasting thirty minutes or less.  If so, the instructions would clearly violate the law, because meals breaks are expressly usable for personal matters.  As <u>Brinker</u> emphasized, employees are entitled to a "full thirty-minute period," where the worker "must be free to attend to <u>any</u> personal business he or she may choose." <u>Brinker</u>, 133 Cal. App. 4th at 340 (internal quotation marks omitted).  Accordingly, the meal break is essentially personal time, where the employee is free to eat <u>or</u> to do anything else for half an hour.  Prohibiting all personal activities during the workday is therefore the equivalent of eliminating meal periods.

11

 Last, evidence that USIS instructed employees to fill each work day in a given geographic area with relevant job duties - and considered any time off "a waste and a failure" - provides some support for the conclusion that USIS unlawfully discouraged duty-free meal periods.

 In sum, Ricaldai offers evidence that she was implicitly trained to take working lunches, expressly told that personal errands were prohibited without prior authorization, specifically directed to fill her entire day in each geographic area with job duties, and correspondingly discouraged from taking any time off. Viewing this evidence in the light most favorable to Ricaldai, a rational trier of fact could conclude that USIS pressured her to take working lunches instead of duty-free meal periods, in violation of California meal period law under Brinker.

 Contrary to USIS' argument, it does not change the summary judgment analysis that USIS exerted no direct control over Ricaldai during her work day and allowed for overtime, and that Ricaldai therefore admitted at deposition that she technically could have scheduled her work day to incorporate a duty-free meal period while still completing her tasks. As discussed, there is sufficient evidence that, viewed in the light most favorable to Ricaldai, USIS nonetheless unlawfully discouraged Ricaldai from scheduling a meal period during her workday.

 Nor is USIS entitled to summary judgment simply because Ricaldai admitted at deposition that, if she had read the employee handbook section on timekeeping, she would have known not to work during meal periods. Throughout the deposition, Ricaldai insisted that the aforementioned USIS policies and practices pressured her

to instead always work through meal breaks.  It is therefore unclear whether Ricaldai's admission meant that, if she had read the relevant handbook statement, it would have overridden the countervailing employer pressure.  Indeed, the opposite conclusion is particularly plausible given that the employee handbook contained only a single statement as to meal periods - not to work during them - and did not inform employees of their other essential meal period rights - i.e. to take a 30-minute meal break every workday of five hours or more, and to do so prior to the fifth hour of work.  In any event, this ambiguity, and the question of whether any USIS pressure undermined its limited formal policy as to meal periods, is for the trier of fact to resolve.

### B.   Derivative Claims

Because the court finds that USIS is <u>not</u> entitled to summary judgment on Ricaldai's meal period claim, none of her other claims fail simply because they are derivative of this claim.

### C.   PAGA & Labor Code Section 226 Claims

#### 1.   Statute of Limitations

Ricaldai concedes that her PAGA claim is barred by California's one-year statute of limitations for statutory claims seeking a penalty or forfeiture.  <u>See</u> Cal. Civ. Proc. Code § 340(a).  USIS is therefore entitled to summary judgment on Ricaldai's fifth cause of action.

Ricaldai argues that her Labor Code section 226 ("Section 226") claim is not similarly time-barred, however, because she is also seeking actual damages under the statute.  <u>See</u> <u>id.</u> § 338(a) (providing a three-year statute of limitations for all other statutory claims).  Ricaldai cites to a district court decision in

13

this Circuit that thoroughly addresses this legal issue and directly supports her position. See <u>Singer v. Becton, Dickinson and Co.</u>, No. 08cv821, 2008 WL 2899825, at *4-5 (S.D. Cal. July 25, 2008). The court agrees with the well-reasoned decision and finds no need to repeat the analysis here. Also, contrary to USIS' contentions, Ricaldai does adequately seek and allege actual damages in her Complaint,[3] and does not concede the absence of such damages in her deposition, as discussed more below.

### 2. Injury & Intent Requirements

Finally, USIS argues that it is entitled to summary judgment on Ricaldai's Section 226 claim, because Ricaldai has failed to show that she suffered an "injury" from any violation of the statute, or that any such violation was "knowing and intentional." Cal. Labor Code § 226(e). The court disagrees.

USIS is correct that "an employee may not recover for violations of Section 226(a) unless he or she demonstrates <u>an injury</u> arising from the missing information." <u>Price v. Starbucks Corp.</u>, 192 Cal. App. 4th 1136, 1142-43 (2011) (stating also that "'deprivation of that information,' standing alone is not cognizable injury"). However, as the court helpfully summarized in <u>McKenzie v. Fed. Express Corp.</u>:

---

[3] (See Compl. ¶ 51 ("As a result of Defendants' violation of California Labor Code Section 226(a), Plaintiff and Class Members suffered injuries, including employee confusion over whether they received all wages owed to them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact properly compensated them."); id. ¶ 52 ("Pursuant to California Labor Code Section 226(e), Plaintiff and Class Members are entitled to recover . . . all actual damages . . . ."); id. at 24 ¶ 5(b) (seeking, among other relief, "[a] monetary award as damages . . . pursuant to Labor Code Section 226(e)").)

14

> [Price] went on to explain that "mathematical injury that requires computations to analyze whether the wages paid in fact compensated [the employee] for all hours worked" is sufficient to establish injury. [192 Cal. App. 4th at 1143] (internal quotation omitted). Specifically, the court noted that this can be proven if the injury arises "from inaccurate or incomplete wage statements," which require the plaintiff to engage "in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid." Id. (citations omitted). Likewise, the California Court of Appeals in Jaimez v. DAIOHS USA, Inc., noted that "[w]hile there must be some injury in order to recover damages [under § 226(e)], a very modest showing will suffice." 181 Cal. App. 4th 1286, 105 Cal. Rptr. 3d 443, 460 (2010). The court further explained that "'this lawsuit, and the difficulty and expense [the plaintiff has] encountered in attempting to reconstruct time and pay records,' may well be 'further evidence of the injury' he has suffered." Id. (quoting Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042, 1050 (C.D. Cal. 2006)).

275 F.R.D. 290, 294 (C.D. Cal. 2011); see also Elliot v. Spherion Pac. Work, LLC, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008) (cited approvingly in Price and citing cases finding injuries such as "the possibility of not being paid overtime" and "employee confusion over whether they received all wages owed them").

Applying this standard, the court finds that there is a genuine issue of material fact as to the injury requirement. Contrary to USIS' characterization, Ricaldai has provided evidence of more than mere technical violations of Section 226. According to Ricaldai, USIS not only failed to list her overtime rate on her wage statements, but was in fact paying her an incorrect and reduced overtime rate: "As shown on my wage statements, I received a 'Spanish Incentive' as part of my wages. Based on my computations, I do not believe that the 'Spanish Incentive' income was included when calculating my overtime pay." (Decl. of Catalina Ricaldai in Supp. of Pl.'s

15

Opp'n to Mot. ¶¶ 3-4.) Ricaldai claims that she therefore "had to perform mathematical computations to determine whether her paychecks were accurate." (Id. ¶ 3; see also supra note 3 (describing the alleged injury in more detail).)[4] A rational trier of fact could believe Ricaldai, and conclude that she suffered an actual injury from having to make these calculations, and from not knowing that she was being underpaid. Nor is Ricaldai's deposition testimony clearly inconsistent with her declaration. Although Ricaldai at one point responded affirmatively that she was not confused by her wage statements and could not recall inaccuracies, there is no indication that she was referring to all aspects of the statements - in particular, the missing and erroneous overtime rates. (See Strauss Decl., Ex. C at 182-86.)

With regard to Section 226(e)'s "knowing and intentional" requirement, USIS cites to decisions granting summary judgment to defendants because the court found a "good faith dispute" as to whether the employees were exempt from Section 226's coverage. See, e.g., Hurst v. Buczek Enters., LLC, No. C-11-1379, 2012 WL 1564733, at *17 (N.D. Cal. May 2, 2012). Here, USIS does not contend that Ricaldai is exempt from statutory coverage. Instead, it maintains that Ricaldai "cannot possibly demonstrate that USIS knowingly violated wage statement obligations since the reason USIS did not include the meal period premium on [her] wage statements is because it

---

[4] As discussed, USIS also failed to record meal periods. If Ricaldai succeeds on her meal period claim, USIS further violated Section 226 by failing to include premium pay for each missed meal period.

Case 2:10-cv-07388-DDP -PLA   Document 79   Filed 05/25/12   Page 17 of 18   Page ID
 #:1475

did not believe (and still does not believe) that it owes [her] for any alleged meal period violations." (Mot. at 21.) The court disagrees. As numerous courts have recognized under similar circumstances, the factual question of whether an employer had a good faith belief that it was not violating Section 226 is generally for the factfinder to resolve at trial. See, e.g., Lopez v. United Parcel Serv., Inc., No. C 08-05396, 2010 WL 728205, at *9 (N.D. Cal. Mar. 1, 2010) ("UPS cannot carry its burden on summary judgment simply by asserting in a conclusory fashion in an argumentative pleading that it acted under a good faith belief plaintiff was exempt. The presence or absence of a good faith belief on UPS's part is a factual question that must be resolved at trial."); Rieve v. Coventry Health Care, Inc., No. SACV 11-1032, 2012 WL 1441341, at *19 (C.D. Cal. Apr. 25, 2012); Perez v. Safety-Kleen Sys., Inc., 253 F.R.D. 508, 517 (N.D. Cal. 2008); Cornn v. United Parcel Serv., No. C03-2001, 2006 WL 449138, at *3 (N.D. Cal. Feb. 22, 2006).

   Here, even if the court were convinced that any wage statement meal period omissions were made in good faith, it is still entirely unclear whether USIS acted in good faith with regard to the alleged overtime errors. A reasonable trier of fact could therefore conclude, as Ricaldai alleges, that USIS "knowingly and intentionally failed to provide" Ricaldai with accurate and itemized wage statements, "and did so in order to conceal [its] liability from [Ricaldai]." (Compl. ¶ 53.)

**IV.  CONCLUSION**

17

In sum, and for all the foregoing reasons, the court DENIES USIS' Motion for Partial Summary Judgment as to Ricaldai's first, third, fourth, and sixth causes of action, for meal period violations, failure to timely pay wages, Section 226 violations, and unfair business practices. The court, however, GRANTS USIS' Motion for Partial Summary Judgment as to Ricaldai's fifth cause of action, for enforcement of the Private Attorneys General Act.

IT IS SO ORDERED.

Dated: May 25, 2012

DEAN D. PREGERSON
United States District Judge