O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CATALINA RICALDAI, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>     v.<br><br>US INVESTIGATIONS SERVICES, LLC, a Delaware limited liablity company,<br><br>              Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 10-07388 DDP (PLAx)<br><br>ORDER GRANTING PLAINTIFF CATALINA RICALDAI AND DEFENDANT US INVESTIGATIONS SERVICES, LLC'S MOTION AND RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CLASS REPRESENTATIVE'S SERVICE AWARD, AND ATTORNEYS' FEES AND LITIGATION COSTS<br><br>[Docket No. 159] |

## I. **Introduction**

Plaintiff Catalina Ricaldai ("Plaintiff") has filed a putative class action against US Investigations Services, LLC ("Defendant") for failure to provide meal periods, failure to properly calculate and pay overtime, failure to timely pay wages, failure to pay wages, failure to maintain and provide accurate itemized wage statements, unfair business practice, and violating California's Private Attorney General Act.  (See generally Second Amended Class Action Complaint ("SACAC"), Docket No. 36.)  Plaintiff and Defendant have reached a proposed settlement, which the Court has

1  preliminarily approved.  (Poliner Decl. Ex. A, Docket No. 129-1;

2  Docket No. 132.)   Presently before the Court is a Motion for Final

3  Approval of Class Action Settlement, Class Representative's Service

4  Award, and Attorneys' Fees and Litigation Costs ("Motion").

5  (Docket No. 159.)   350 of the 601 class members in this action have

6  submitted claim recovery forms, and the average class member will

7  receive $1,517.62 under the proposed final settlement.  (Poliner

8  Decl. ¶ 11, Docket No. 159-1.)   Putative class members Tom P.

9  Wilson, John Perkins, William Megee, D. Andrew Jones, Maggie Green,

10  and Linda Callahan ("Objectors") have objected to the Motion.

11  (Docket No. 160.)

12  **II. <u>Legal Standard</u>**

13     "Assessing a settlement proposal requires a district court to

14  balance a number of factors: the strength of the plaintiffs' case;

15  the risk, expense, complexity, and likely duration of further

16  litigation; the risk of maintaining a class action status

17  throughout the trial; the amount offered in settlement; the extent

18  of discovery completed and the stage of the proceedings; the

19  experience and views of counsel; and the reaction of the class

20  members to the proposed settlement."  <u>In re Mego Fin. Corp. Sec.</u>

21  <u>Litig.</u>, 213 F.3d 454, 458 (9th Cir. 2000).  "[T]he settlement may

22  not be the product of collusion among the negotiating parties."

23  <u>Id.</u>

24     "The weight of authority holds that a federal court may

25  release not only those claims alleged in the complaint, but also a

26  claim based on the identical factual predicate as that underlying

27  the claims in the settled class action even though the claim was

28  not presented and might not have been presentable in the class

2

1    action."  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287
2    (9th Cir. 1992).  "Although the Ninth Circuit has only applied the
3    identical factual predicate test in the context of challenges to
4    subject matter jurisdiction and preclusion doctrines, courts in
5    other circuits have applied this test as part of the fairness
6    inquiry for approving a class-action settlement."  Anderson v.
7    Nextel Retail Stores, LLC, CV 07-4480-SVW FFMX, 2010 WL 8591002
8    (C.D. Cal. Apr. 12, 2010) (citing TBK Partners, Ltd. v. W. Union
9    Corp., 675 F.2d 456, 461-62 (2d Cir. 1982).)

10   **III. Analysis**

11        Objectors state that Plaintiff's overtime claims are narrower
12   than theirs, claiming that, unlike Plaintiff, Wilson and
13   "presumably other class members were unpaid for many hundreds of
14   hours of overtime."  (Lueck Decl. ¶ 24, Docket No. 160.)  Objectors
15   state that the proposed settlement release is too broad because it
16   would bar their overtime claims, which were brought in a different
17   putative class action that was filed over two years after the
18   instant case.

19        At times the SACAC seems to imply that Plaintiff's overtime
20   claim is narrower than Objectors.  For instance, the SACAC suggests
21   that class members were paid for overtime, but they were paid at
22   their normal hourly rate, not time-and-a-half.  (SACAC ¶ 36.)  By
23   contrast, Objectors claim that they were not paid at all for
24   overtime.  A careful reading of the SACAC, though, indicates that
25   the complaint sues for all unpaid overtime: "Defendants have failed
26   and refused, and continue to fail and refuse, to properly calculate
27   and pay Plaintiff and members of the Subclass for all owed
28   overtime, as required by California wage and hour laws."  (SACAC ¶

3

35.)   Thus, Plaintiff's SACAC seeks redress for both incorrectly calculated and unpaid overtime, the latter of which being the subject of Objectors' putative class action.

That Plaintiff's overtime claim is based on the same factual predicate as Objectors' is further illustrated by Plaintiff's evidence that she investigated how many members of the putative class underreported the number of hours they worked.  (Poliner Decl. ¶ 19.)[1]  Plaintiff surveyed 100 randomly-selected class members, out of a class of 601, about issues relating to potential overtime claims.  (Id. ¶¶ 11, 19-20.)  "The results of the survey reveal that seventy-six (76%) of the putative class members who responded to the questionnaire answered that they accurately recorded all hours worked while employed by USIS.  Sixteen (16%) responded that they did not record all hours worked, but that USIS had no knowledge that they were not recording all hours worked."  (Id. ¶ 20.)  The survey also found that: "Only three (3) of the surveyed class members stated that they worked off-the-clock overtime hours and thought USIS knew they were working those hours.  One of the two said that he stayed overnight at a location on a particular occasion and was told to 'never do that again' when his supervisor found out."  (Id. ¶ 21.)  These survey results indicate that Objectors' overtime claims are not common to Plaintiff's putative class.

Additionally, narrowing the instant settlement release, as Objectors request, may hurt the individuals Objectors seek to

---

[1]The theory behind Objectors' overtime claim is that USIS pressured employees to do 50-60 hours of work per week but only allowed them to report that they did 40 hours.  (Lueck Decl. ¶ 9.)

represent in their putative class action.  In this case, Defendants have an unambiguous policy against employees under-reporting the number of hours that they have worked.  (Poliner Decl. ¶ 16.) Defendant also requires its employees to certify their hours, and "verify that [their] timesheet reports all overtime worked during the pay period."  (Poliner Decl. ¶ 18.)  With such facts, proving overtime violations of the type Objectors claim is an uphill, fact-intensive battle, and many courts have refused to certify a class under similar circumstance.  See, e.g., Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1051-52 (2012) (holding that employees working off-the-clock are presumed to be not working and affirming denial of certification of off-the-clock class claims because "nothing before the trial court demonstrated how this could be shown through common proof, in the absence of evidence of a uniform policy or practice"); see also In re AutoZone, Inc., 2012 U.S. Dist. LEXIS 181597, at *29-39 (N.D. Cal. Dec. 21, 2012) (denying certification of off-the-clock claims); York v. Starbucks Corp., 2011 U.S. Dist. LEXIS 155682, at *83-87 (C.D. Cal. Nov. 23, 2011) (denying certification on off-the-clock claim and noting that establishing liability would require individualized proof about the fact that work was performed, why work was performed, and whether the company had any reason to know about the work).[2]

_____

[2]Objectors also state that because Plaintiff was employed between 2003 and 2008, she is an inadequate representative regarding claims that Defendant failed to pay overtime between 2010 and 2012, which was when Defendant employed Wilson. (Lueck Decl. ¶ 8.)  However, Plaintiff's survey results were derived from a randomly selected sample size of about 17% of the class.  Those results indicate that the underreporting of overtime hours, even if such actions occurred more frequently between 2010 and 2012, was a rare occurrence.  Thus, Wilson's putative class action, if it were
(continued...)

**IV.  Conclusion**

For these reasons, the Court GRANTS the instant Motion.  The Court also adopts and incorporates the proposed order at Docket No. 159-2.

IT IS SO ORDERED.

Dated: September 6, 2013

DEAN D. PREGERSON
United States District Judge

---

[2] (...continued)
allowed to continue, would encounter difficulty meeting the numerosity requirement for class certification.  And for the reasons discussed above, underreporting hours could be a fact-intensive individual question, potentially inappropriate for a class action.  In light of the challenges Wilson's putative class would face, it would be unfair to deny finalization of the instant settlement and jeopardize the money damages the instant class stands to recover.